**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ZACKARY A.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 3:24-CV-1208 (PJE)

---

**APPEARANCES:** **OF COUNSEL:**

Lachman, Gorton Law Firm
P.O. Box 89
1500 East Main Street
Endicott, New York 13760
Attorneys for plaintiff

PETER A. GORTON, ESQ.

Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for defendant

JASON P. PECK, ESQ.

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION AND ORDER**[1]

Zachary A.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) seeking review of a decision by the Commissioner of the Social Security Administration ("the Commissioner") denying his application for "Social Security

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, L.R. 72.2(b), L.R. 72.3(b), and General Order 18. *See* Dkt. No. 7.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

disability and supplemental security income disability benefits" ("SSI"). *See* Dkt. No. 1. Plaintiff moved for the Commissioner's decision to be vacated and remanded for the calculation of benefits, or in the alternative, for further proceedings. *See* Dkt. No. 10. The Commissioner moved for the decision to be affirmed. *See* Dkt. No. 12.[3] Plaintiff filed a reply. *See* Dkt. No. 13. For the following reasons, plaintiff's cross-motion is granted, the Commissioner's cross-motion is denied, and the Commissioner's decision is reversed and remanded for further proceedings.

## I. **Background**

On January 21, 2022, plaintiff filed Title II and Title XVI applications for SSI benefits, alleging a disability onset date of January 1, 2022. *See* T. at 210-16[4] (*See* Dkt. No. 8-5)[5]. On June 9, 2022, the Social Security Administration ("SSA") denied plaintiff's claim. *See id.* at 86-91 (*See* Dkt. No. 8-4). Plaintiff sought reconsideration, which the SSA denied on November 4, 2022. *See id.* at 105, 111-24, 217 (*See* Dkt. Nos. 8-4, 8-5). Plaintiff appealed and requested a hearing. *See id*. at 125-37, 218 (*See* Dkt. Nos. 8-4, 8-5). On November 15, 2023, a hearing was held before Administrative Law Judge ("ALJ") Mary Jane Pelton. *See id.* at 29-50 (*See* Dkt. No. 8-2). On December 14, 2023, the ALJ issued an unfavorable decision. *See id.* at 12-28 (*See* Dkt. No. 8-2). On August 8, 2024, the Appeals Council affirmed the ALJ's determination, and the decision became final. *See id*. at 1-6. Plaintiff commenced this action on October 2, 2024. *See* Dkt. No. 1.

---

[3] This matter has been treated in accordance with General Order 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgement on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

[4] "T." followed by a number refers to the pages of the administrative transcript. *See* Dkt. No. 8. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page. Citations to the parties' briefs refers to the pagination generated by the Court's electronic filing and case management program located at the header of each page.

[5] Due to the voluminous nature and many parts of the administrative transcript, in addition to the record citation, the Court will include the docket cite for factual citations.

## II. **Legal Standards**

### A. **Standard of Review**

"In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled." *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (citing 42 U.S.C. §§ 405(g), 1388(c)(3)); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987)); *see also Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "Substantial evidence is 'more than a mere scintilla,' meaning that in the record one can find 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))). "The substantial evidence standard is a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Id*. (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)) (internal quotation marks omitted). "Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence." *Id.* (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986)). "However, if the correct legal

standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" *Id*. (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

B. **Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id.* § 423(d)(1)(A). "A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience." *Joseph J. B.*, 2024 WL 4217371, at *2 (citing 42 U.S.C. § 423(d)(2)(A)). "Such an impairment must be supported by 'medically acceptable clinical and laboratory diagnostic techniques.'" *Id.* (citing 42 U.S.C. § 423(d)(3)). "Additionally, the severity of the impairment is 'based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience.'" *Id.* (quoting *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983))).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . .

*Berry*, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Joseph J. B.*, 2024 WL 4217371, at *2 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003)). "The plaintiff bears the initial burden of proof to establish each of the first four steps." *Id*. (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467)). "If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere." *Id.* (citing *DeChirico*, 134 F.3d at 1180 (citing *Berry*, 675 F.2d at 467)).

## III. **The ALJ's Decision**

Applying the five-step disability sequential evaluation, the ALJ first noted that plaintiff had "not engaged in substantial gainful activity since January 20, 2022, the application date." T. at 17 (*See* Dkt. No. 8-2). At step two, the ALJ found that plaintiff "has

the following severe impairments: a depressive disorder, an anxiety disorder and [post-traumatic stress disorder ("PTSD")]." *Id*. (*See* Dkt. No. 8-2). At step three, the ALJ determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. at 18 (*See* Dkt. No. 8-2).

Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> to perform a full range of work at all exertional levels, and the claimant can understand, remember and carry out simple instructions. The claimant can use judgment to make simple, work-related decisions. They should work in a job with only occasional changes in the routine work setting. The claimant cannot perform work that requires a specific production rate or work that requires hourly quotas. They can have occasional interaction with supervisors, coworkers and the public.

*Id*. at 20 (*See* Dkt. No. 8-2). At step four, the ALJ determined that plaintiff "has no past relevant work." *Id*. at 23 (*See* Dkt. No. 8-2). At step five, the ALJ determined that "[c]onsidering age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. (*See* Dkt. No. 8-2). The ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, since January 20, 2022, the date the application was filed." *Id*. at 24 (*See* Dkt. No. 8-2).

## IV. **Discussion**

### A. **Arguments**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. *See* Dkt. No. 10 at 3, 13-26. More specifically, plaintiff argues that the ALJ failed to consider his gender dysphoria at step two, and his gender dysphoria constitutes

a severe impairment. *See id*. at 13-14. Plaintiff also asserts that the ALJ (1) cherry picked evidence and failed to consider SSR 85-15 when she concluded that he can work without consistently without limitation, (2) erroneously concluded that he can occasionally interact with other people, (3) improperly assessed the medical opinions of record, and (4) failed to consider his time off-task and attendance limitations. *See id*. at 14-26.

The Commissioner argues that substantial evidence supports the ALJ's decision which should be affirmed. *See* Dkt. No. 12 at 5-15. The Commissioner contends that the ALJ's RFC determination considered plaintiff's gender dysphoria and related impairments, considered plaintiff's "medically determinable work-related impairments," and "adequately explained the RFC's limitation for occasional social interaction with others." *Id*. at 5. The Commissioner argues that the ALJ considered plaintiff's gender dysphoria after step two because the ALJ discussed Dr. Long's consultative examination report that noted plaintiff was diagnosed with gender dysphoria. *See id*. at 8 (citing T. at 565-68). Further, the Commissioner claims that the ALJ's RFC determination specifically "contained mental work-related limitations" and plaintiff testified that gender dysphoria was not the main cause of his mental health difficulties. *Id*. at 6; *see id*. at 8. The Commissioner also claims that the ALJ properly considered the medical opinions of record, and therefore, SSR 85-15 is not relevant to this matter. *See id*. at 11-17. Finally, the Commissioner argues that the ALJ did not cherry-pick the evidence to support her decision and plaintiff is asking the Court to reweigh the evidence. *See id*. at 16-17.

In reply, plaintiff asserts that the Commissioner's argument regarding the ALJ's consideration of his gender dysphoria is factually and legally incorrect. *See* Dkt. No. 13 at 2-3. Plaintiff asserts that Commissioner's argument is factually incorrect because

neither of the state non-examining psychological consultants (1) recognized gender dysphoria or dissociative identity disorder as an impairment, (2) acknowledged his claim that he was disabled due to gender dysphoria, and (3) considered dissociative identity disorder. *See id*. at 2. Plaintiff also claims that Dr. Long was unaware of his dissociative identity disorder. *See id*. Plaintiff asserts that Commissioner's argument is legally incorrect because the state medical consultants' consideration of his gender dysphoria does not absolve the ALJ of her "duty to consider that diagnosis and related symptoms at Step 2, in evaluating the medical opinions, and in forming the RFC." *Id*. at 3. Plaintiff argues that the ALJ cannot delegate her duty to consider the evidence to others. *See id*. Plaintiff claims that "[t]he ALJ's 'lumping' all of [his] psychiatric impairments together and failing to make an individualized assessment of [his] particular symptoms is prejudicial error warranting remand." *Id*. at 4 (citing *Rucker v. Kijakjazi*, 48 F.4th 86, 92 (2d Cir. 2002)).

B. **Severe Impairments**

"At the second step of the evaluation, the medical severity of a claimant's impairments is considered." *Richard H. v. Comm'r of Soc. Sec.*, No. 5:17-CV-0515 (DNH/TWD), 2018 WL 4627118, at *4 (N.D.N.Y. Aug. 15, 2018), *report and recommendation adopted,* No. 5:17-CV-0515 (DNH/TWD), 2018 WL 4625402 (N.D.N.Y. Sept. 26, 2018) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). A claimant's impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. A claimant's own "statement of

symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)" is not sufficient. *Id*.

"A 'severe impairment' is defined as any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Richard H.*, 2018 WL 4627118, at *4. (citing 20 C.F.R. §§ 404.1520(c); 404.1521) (internal quotation marks omitted). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). Basic work activities include

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

*Id*. § 404.1522(b)(1)-(6). The claimant is responsible for submitting evidence establishing the severity of their disability. *See id*. § 404.1512(a)(2)(i).

Here, the ALJ determined that plaintiff had severe impairments consisting of depressive disorder, anxiety disorder, PTSD. T. at 17 (*See* Dkt. No. 8-2). The ALJ explained that

> [t]he claimant has complained of depression, anxiety and PTSD (Exhibit 4F, p.2). They have a history of suicidal ideation (Exhibit 7F, p.2). At times, they have appeared anxious with circumstantial thought processes (Exhibit 1F). On other occasions, they have had impaired cognition (Exhibit 7F, p.4). They received outpatient mental health treatment throughout the period in question.
>
> The impairments above cause more than minimal limitations in the claimant's ability to perform basic work activities. Accordingly, they are severe impairments.

*Id*. at 17-18 (*See* Dkt. No. 8-2).

Plaintiff argues that the ALJ failed to consider his gender dysphoria at step two, and that this condition constitutes a severe impairment. *See* Dkt. No. 10 at 13-14. Plaintiff was diagnosed with gender dysphoria in March 2021. *See* T. at 332, 492, 650 (*See* Dkt. No. 8-7). The prior administrative medical findings ("PAMFs") note this diagnosis. *See id*. at 63-64, 80 (*See* Dkt. No. 8-3). The record indicates that plaintiff's symptoms include depression, anxiety, visual impairment, feelings of hopelessness and anger, lethargy, somnolence, panic attacks, suicidal ideation, difficulty concentrating and completing tasks. *See id*. at 330, 337, 340, 343, 346, 349, 352, 362, 610-11, 616, 694, 720 (*See* Dkt. No. 8-7). Plaintiff's depression was described as leaving him "unable to work, leave the house, [or] get out of bed." T. at 364 (*See* Dkt. No. 8-7). Plaintiff's symptoms were also described as impacting most areas of his life, including his ability to function, work, and his "work life." *Id*. at 435, 459 (*See* Dkt. No. 8-7); *see id*. at 364, 373, 656 (*See* Dkt. No. 8-7). Plaintiff reported going to the bathroom and crying at work because "'no one understands' how he feels." *Id*. at 362. Similarly, he stated that "he feels like he cannot handle working because of his speed and the frequent criticism he experiences." *Id*. at 376. Neither plaintiff's treatment providers, nor the PAMFs, explain which symptoms are attributable to which of plaintiff's mental health condition(s) in the treatment records listed above.

Based on the foregoing, it is unclear whether plaintiff's gender dysphoria is a severe impairment because the ALJ's decision does not discuss or reference plaintiff's gender dysphoria, and plaintiff's treatment records state that his symptoms affect his physical and mental abilities, including his ability to work. *See* T. at 15-24, 364, 373, 435,

459, 656 (*See* Dkt. Nos. 8-2, 8-7); *see also Richard H.*, 2018 WL 4627118, at *4. (citing 20 C.F.R. §§ 404.1520(c); 404.1521); 20 C.F.R. § 404.1522(b)(1)-(6). Therefore, as the ALJ did not determine whether this condition constitutes a severe impairment, judicial review is frustrated, and remand is necessary for the ALJ to render a determination in the first instance. *See Kaliegh O. v. Comm'r of Soc. Sec.*, No. 5:19-CV-940 (TWD), 2020 WL 5751171, at *5 (N.D.N.Y. Sept. 25, 2020) (citing *Bartrum v. Astrue*, 32 F. Supp. 3d 320, 331 (N.D.N.Y. 2012)) ("[I]t is the ALJ's responsibility to make factual findings in the first instance, not this Court's."); *Rodgers v. Saul*, No. 3:19-CV-653 (JCH), 2020 WL 13551952, at *4 (D. Conn. May 28, 2020) (noting that "it is the role of the ALJ, the factfinder in the first instance" to consider the evidence); *Williams v. Astrue*, No. 10-CV-5521 (CBA), 2012 WL 3096694, at *1 (E.D.N.Y. July 30, 2012) ("[I]t is for the Social Security Administration, not this Court, to weigh conflicting evidence in the first instance and fully develop the record[.]").

Additionally, as the adjudication of plaintiff's gender dysphoria may potentially impact the remainder of the ALJ's five-step analysis, the Court will not address plaintiff's remaining arguments, which the ALJ may consider on remand. *See Devra B. B. v. Comm'r of Soc. Sec.*, No. 6:20-CV-643 (BKS), 2021 WL 4168529, at *8 (N.D.N.Y. Sept. 14, 2021) ("Because the Court has determined that remand is required, the Court does not reach Plaintiff's remaining arguments."); *Shields v. Astrue*, No. 11-CV-2088 (FB), 2012 WL 1865505, at *3 (E.D.N.Y. May 22, 2012) ("In light of the decision to remand this case with instructions to consider new evidence on Shields's cardiac condition, it is not necessary to address this argument."); *Mary S. v. Kijakazi*, No. 3:21-CV-1095 (RMS), 2022 WL 4074536, at *17 (D. Conn. Aug. 26, 2022) (quoting *Lockwood v. Comm'r of Soc.*

*Sec. Admin.*, 914 F.3d 87, 94 (2d Cir. 2019) ("[S]ince the 'case must return to the agency either way for the reasons already given . . . the Commissioner will have the opportunity on remand to obviate th[ese] dispute[s] altogether by' addressing the remaining arguments on remand."); *Annunziato v. Berryhill*, No. 3:17-CV-606 (JAM), 2019 WL 156934, at *4 (D. Conn. Jan. 10, 2019) ("The ALJ shall also consider plaintiff's remaining arguments on remand.").

V. **Conclusion**

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that plaintiff's cross-motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED**, that the Commissioners cross-motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's decision is **REVERSED, and the matter REMANDED for further proceedings**; and it is

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision & Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Date: March 3, 2026
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge